UNITED STATES *v.* PETER McQUADE (No. 3092) [1]

[1] T. D. 43080.

United States Court of Customs Appeals, November 19, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Reuben Wilson* and *Fred J. Carter*, special attorneys, of counsel, for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* and *Joseph Schwartz* of counsel) for appellee.

[Oral argument October 8, 1928, by Mr. Carter and Mr. Barnes]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

On the 21st day of July, 1917, Peter McQuade, the appellee, imported at the port of New York six puncheons of whisky which he then entered for warehousing. One puncheon was withdrawn on August 30, 1917. On October 4, 1917, the revenue act of 1917 went into effect. On December 10, 1917, the entry was reliquidated on the remaining five puncheons at the rate of $2.60 per gallon, under paragraph 237 of the tariff act of October 3, 1913, plus $2.10 per gallon, under section 300 of the said revenue act of 1917. On October 19, 1917, one additional puncheon was withdrawn, and two more on January 27, 1919. The revenue act of 1918 went into effect on February 25, 1919. The two remaining puncheons were withdrawn on March 7, 1919. On withdrawal of the last two puncheons, the importer was required to pay duties at the rate of $2.60 per gallon, under paragraph 237 aforesaid, plus $6.40 per gallon, under section 600 (a) of said revenue act of 1918. No protests were filed by the importer within the statutory time after these withdrawals. On January 10, 1923, the collector attempted to reliquidate on the five puncheons last withdrawn. This attempted reliquidation appears to have been at the same rates as theretofore fixed at the times of the preceding withdrawals, the only apparent change in the liquidation being an allowance to the importer, for outage, of $42.82. Within the statutory period after the said pretended reliquidation of January 10, 1923, the importer duly protested, the protest being, so far as relevant, as follows:

1. That the entry was previously liquidated, and all of the merchandise covered thereby was withdrawn from warehouse and delivered from customs custody and the liquidated duties fully paid thereon more than one year prior to the said reliquidation, and that the original liquidation of said duties confirmed by your decision permitting withdrawal on payment of the liquidated duties became final and conclusive one year from the date of such withdrawal, and that under the provisions of section 21 of the act of June 22, 1874, you had no authority to reliquidate said entry for an increase in duties.

2. That the said liquors were not subject to any further or other duty than the duty paid on withdrawal thereof.

| Vessel | Entry No. | Entry date | Date of reliquidation |
|---|---|---|---|
| Coastwise | WHB 1967 | July 21, 1917 | Jan. 10, 1923 |

The matter was heard before the Customs Court, and, on the conclusion of said hearing, an opinion was rendered by that court as follows:

ADAMSON, Justice: In this case the importer protests the reliquidation on certain liquors on the ground that it was made more than a year after duty had been paid and the merchandise had been finally delivered to the importer, without any justification in the shape of fraud or any other reason that the former liquidation, payment, discharge, and withdrawal had become final and conclusive and the collector had no lawful authority to reliquidate said entry at the time it was done. An investigation of the record and consideration of the testimony in the case supports the allegations in the protest. The same is sustained and the collector will cancel the reliquidation complained of.

WAITE, J., YOUNG, J., concurring.

A judgment was also entered, the pertinent part of which is as follows:

It is hereby ordered, adjudged, and decreed that the protest claiming erroneous reliquidation is sustained and the collector of customs at the port of New York will reliquidate, refunding all the additional duties assessed on the previous reliquidation.

The Government applied for a rehearing, calling attention, in its said application, to the following matters:

The court, however, in its judgment order also directs the collector of customs to reliquidate and refund all additional duties assessed on the previous reliquidation. The latter part of the court's order referred to herein does not seem to be very clear.

A rehearing was not allowed, and the matter now comes to the court on the Government's appeal, it being alleged that the court below erred in not amending its judgment order, in ordering refunded all the additional duties assessed on the previous reliquidation, and in not holding that the duties paid by the importer at the time of withdrawal of the merchandise from warehouse were properly assessed by the collector.

The apparent necessity for this appeal seems to arise, not from the findings of the court below but from the claimed ambiguity of its judgment. The appellee contends, at least upon the oral argument, that the effect of such judgment will be that the collector must refund all additional duties collected by virtue of the said revenue act of 1918, retaining only the duties collected as provided by paragraph 237 of the Tariff Act of October 3, 1913, as reliquidated December 10, 1917. The Government, on its part, expresses a fear that the same result may follow, and hence appeals. Because of this situation,

counsel on both sides, in their briefs, discuss at length the law as to liquidation, and review the authorities.

As we view the matter, much of this discussion is beside the question. The only question involved in the protest was the validity of the attempted reliquidation of January 10, 1923. The Government concedes that this attempted reliquidation was a nullity, as having been made beyond the statutory period of one year provided by section 521 of the Tariff Act of 1922.

Disregarding, therefore, the attempted action of the collector, of January 10, 1923, what is the status of the parties? The protestant has obtained all the relief he asked for in his protest, namely, that the pretended reliquidation of January 10, 1923, be set aside. Further relief he can not claim, except to rely upon the status quo existing after the setting aside of such attempted reliquidation. The importer is confined to the issues raised in his protest. *Benjamin Iron & Steel Co.* v. *United States*, 2 Ct. Cust. Appls. 159, T. D. 31677; *United States* v. *Park & Tilford*, 3 Ct. Cust. Appls. 350, T. D. 32907; *United States* v. *Troy Laundry Machinery Co.*, 5 Ct. Cust. Appls. 430, T. D. 34947; *United States* v. *National Gum & Mica Co.*, 9 Ct. Cust. Appls. 250, T. D. 38207.

Discussing this status quo, the importer argues that there was no reliquidation except that of December 10, 1917, heretofore mentioned. After that reliquidation, as we have seen, three puncheons were withdrawn from warehouse and duties paid thereon according to said reliquidation. This leaves but the two puncheons which were withdrawn from warehouse on March 7, 1919, and upon which duties were levied, and paid by the importer, under paragraph 237 of said Tariff Act of 1913 and said section 600 (a) of said revenue act of 1918. As to these two puncheons, appellee claims that the collector should now refund to him the difference between $2.10 and $6.40 a gallon, additional duties, caused by the difference between the said revenue acts of 1917 and 1918, and that such is the effect of the judgment below.

It will be observed that when the importer withdrew the last whisky on March 7, 1919, he paid the duties, both ordinary and additional, voluntarily and without protest. If the payment and exaction of these duties constituted a decision of the collector as to the rate and amount of duties chargeable upon the whisky, then the importer, if he questioned it, was bound to protest within 30 days or to be fully and finally concluded thereby. Section III N of the tariff act of October 3, 1913, the applicable statute, in part, is as follows:

N. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty

shall have been assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. * * *

In considering whether such assessment and collection of duties was a protestable decision, reference must be had to the language of section 600 (a) of the revenue act of February 24, 1919, then in full force and effect. It is, in part, as follows:

SEC. 600 (a) That there shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States, except such distilled spirits as are subject to the tax provided in section 604, in lieu of the internal-revenue taxes now imposed thereon by law, a tax of $2.20 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $6.40) on each proof gallon, or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law. * * *

It will be observed that this last quoted provision makes the amount of additional duty dependent upon whether the whisky is withdrawn for beverage or other purposes. This, of course, can not be ascertained until the whisky is actually withdrawn. In this respect the case seems to be the same as *Taylor & Co.* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636, where distilled spirits previously imported and warehoused were subjected to an additional duty by virtue of section 300 of the revenue act of October 3, 1917. The court said, in part:

It will be noted therefrom that at the time of withdrawal, and not before, the statute imposes upon the importer and vests in him the right to determine whether the goods are to be withdrawn for beverage purposes or nonbeverage purposes. Dependent upon whether withdrawn for beverage purposes or non-beverage purposes is determined the applicable and proper rate of additional duty prescribed by section 300. Whatever may have been in the mind of the importer before or after is not made by the statute controlling. The only legal expression of his intention in this particular binding upon the Government and upon himself is by said section 300 fixed at the time of his withdrawal, and ex necessitate by his withdrawal entry. Until that time, therefore, and until that entry is made, the applicable rate of duties is not and can not be fixed. Until that time, therefore, the decision of the collector can not be final. Whether it was the same as the reliquidation or different, at the time of the filing of the

withdrawal entry, the collector is, within the principle of the decisions quoted, called upon expressly or impliedly upon such withdrawal to finally decide both the rate and the amount of duties accruing, according to the character of the withdrawal entry. In these cases, except as hereinafter mentioned, such withdrawal entries were duly filed and payment of duties finally impliedly exacted by the collector at that time. Within due statutory time thereafter, except as hereinafter mentioned, these protests were filed. It would seem therefore that they were timely.

Distilled spirits, brandy, was involved in *Bertrose Co.* v. *United States*, 12 Ct. Cust. Appls. 19, T. D. 39893, bringing into question the same provisions of law construed in the *Taylor* case, *supra*. The court said:

The Treasury Department in 1904, T. D. 25453, *supra*, somewhat exhaustively considered this question and reviewed pertinent authorities, among others, T. D. 22805 (G. A. 4865), decided by the Board of General Appraisers in 1901. In that case the board in substance concluded that where goods in bonded warehouse became subject to a different rate of duty than when placed therein the collector's refusal to reliquidate at the time of withdrawal must be taken as a decision by him that a former liquidation was correct, although there was no particular moment of time prior to withdrawal at which the collector was required to make the reliquidation. And the department, agreeing with the board, held that in such case the collector's duty was to reliquidate such entries either before or at the time of withdrawal; that if he failed or refused so to do the importer's right of protest accrued at the time of withdrawal.

Again in 1913, T. D. 33949, the department expressed its adherence to the same view and there is nothing to indicate that it has ever departed therefrom. This conclusion seems to rest in part at least upon the fact that the applicable statutes have provided that at the time of withdrawal from bonded warehouse it was incumbent upon importer to settle and pay all the duties then found assessable against the merchandise as a condition precedent to its delivery to him, and the further fact that he was entitled then to know definitely what course to take to protect his rights.

Consistently therewith, this court held in *Taylor & Co.* v. *United States, supra*, that under similar circumstances the importer's right of protest first accrued at the time of such withdrawal and settlement of duties. It was in that case pointed out, in view of the facts there present, that this was the first time when the applicable rate of duty upon the merchandise so withdrawn could be fixed and the collector was called upon expressly or impliedly to determine both the rate and amount of duties then accruing. We think this is sound law as applicable to the facts in the instant case and this decision is limited thereto.

But, it is argued here by appellee, there was in fact no reliquidation on March 7, 1919, when the last whisky was withdrawn; that the collector then failed to stamp upon the entry the word "reliquidated" and the date of stamping, as was required by article 615 of the Customs Regulations of 1915. In support of this, he calls attention to the entry and the various notations upon and attachments thereto. This court is unable to determine, among the multitude of attachments to, and notations upon, the entry herein, what the facts may be in this respect. However that may be, even if the entry was not so stamped, could it be argued that the importer might not have

protested, within the legal time after such withdrawal and payment of duties? We held, in *Bertrose Co.* v. *United States, supra,* that he might do so, in this language:

> If the doctrine contended for by the Government be upheld, the purpose of section 21 of the act of 1874 in cases of this kind would manifestly be defeated. It was intended thereby to fix a time, after the settlement and payment of duties and the delivery of merchandise to importer, at which a liquidation would be final and conclusive upon all parties in the absence of fraud and protest. It was not contemplated that a collector, by failing to perform his duty to liquidate at the time of withdrawal and place the liquidation stamp upon the entry in cases such as this, could reserve to himself an unlimited time in which the act of liquidation could be performed by him. The statute itself gives him only one year, in the absence of fraud and of protest, in which to make any further reliquidation, and that statute is the measure of his right and power.

If the importer has such a right, then it logically follows that he must avail himself of the right to protest within the statutory period, whether the entry be stamped or not, or be barred of any remedy. If he claimed he had paid duties without a real reliquidation, then he might protest on that account. Not having done so, we think he is barred.

It is argued by appellee that the opinions of this court in *United States* v. *Fensterer & Ruhe,* 12 Ct. Cust. Appls. 410, T. D. 40586, and *United States* v. *Andrews & Co.,* 14 Ct. Cust. Appls. 62, T. D. 41576, depart from the rule announced in the *Taylor* and *Bertrose* cases, *supra.* We can not agree with this contention and see nothing in the opinions cited which is at all in conflict with the *Taylor* and *Bertrose* cases. It must be always borne in mind that the *Taylor* and *Bertrose* cases, as the case at bar, dealt with distilled spirits, the duties upon which depended entirely upon the importers' actions at the time of withdrawal from the warehouse for consumption.

We are of opinion that the conclusions of the court below, in the case at bar, were in harmony with the views here expressed, and that, in its judgment order heretofore quoted, the words "previous reliquidation" were intended to refer to the pretended reliquidation of January 10, 1923. As so construed, the judgment of the customs court is *affirmed.*